UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § <br> § |
| v. | § Criminal No.: 4:25-cr-327-1 <br> § |
| DERA OGUDO (1), | § <br> § |
| Defendant. | § <br> § |

**UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT
OGUDO'S PRE-TRIAL DISCOVERY MOTIONS**

This response addresses the *Amended Notice of Filing of Discovery Letter* [Docket Entry Nos. 43 (original) and 47 (amended)] and the *Amended Motion for Production of Favorable Evidence* [Docket Entry Nos. 46 (original) and 48 (amended)] that Defendant Dera Ogudo ("Ogudo") filed in the above-captioned case.

Both motions should be denied as either meritless or moot. With respect to the "notice" and the accompanying proposed order, Ogudo's request is procedurally improper. Local rules and standard practice ensure that the Court will wade into discovery disputes only once there is an actual dispute and the parties have reached an impasse after meaningful conferral. That has not happened here. Rather, Ogudo has simply asked the Court to bless all of the statements contained within a lengthy discovery letter—before even receiving the government's responsive letter.

The same is true of the *Brady* motion. The Court already entered a *Brady* order, and the government has reaffirmed once again that it aims to go far beyond its constitutional and statutory discovery obligations out of a commitment to transparency. There is no need for the Court to enter an advisory opinion as to the precise scope of those obligations—particularly before the parties even have an opportunity to confer about what is being produced and how the government will go about ensuring that it has conducted a thorough search for discoverable materials. In any event,

1

many of the items listed in Ogudo's *Brady* motion are unsupported by statute or case law, or even contradict other legal requirements (such as the grand jury secrecy imposed by Rule 6(e)).

I. **Factual and Procedural History**

On June 18, 2025, the grand jury returned an Indictment charging Ogudo with one count of conspiracy to commit healthcare fraud and mail fraud, in violation of 18 U.S.C. § 1349, six counts of health care fraud, in violation of 18 U.S.C. § 1347, one count of conspiracy to pay and receive kickbacks, in violation of 18 U.S.C. § 371, three counts of the payment of kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2), and fourteen counts of money laundering, 18 U.S.C. § 1957. (Docket Entry No. 1).

The Indictment alleges a six-year Medicare hospice fraud and kickbacks conspiracy led by Ogudo through the operation of three hospice companies, United Palliative & Hospice Care ("UPHC"), Residential Hospice and Cedar Hospice. (Docket Entry No. 1). The Indictment alleges that Ogudo and her co-conspirators enrolled vulnerable elderly and mentally ill adults in hospice even though they were not terminally ill, misled patients to believe they were enrolled in "palliative" services, not hospice, paid kickbacks for patient referrals to group home owners and marketers, and bribed a physician to fraudulently certify patients as terminally ill when they were not. *Id.* Evelyn Shaw, a UPHC marketer, was the discharge coordinator at a local psychiatric hospice. *Id.* Ogudo is alleged to have paid Shaw kickbacks to enroll over 100 patients with severe psychiatric conditions in hospice care upon their discharge from inpatient psychiatric care. *Id.* Ogudo also paid kickbacks to group home owners and enrolled their residents in hospice services. *Id.* In addition, Ogudo managed her own group home and enrolled those residents in her own hospice company. *Id.* In just 6 years, Ogudo's companies billed Medicare approximately $100 million and were paid approximately $87 million in hospice services. *Id.*

On July 16, 2025, the United States provided a discovery letter and index listing the items that would be produced via hard drive. The letter listed every search warrant that had been executed during the course of the investigation, made the evidence available for inspection, and provided information about a filter review process. The discovery index lists over 36,000 lines of items, including interview reports and corresponding investigator notes where they exist, grand jury subpoena responses, selected search warrant evidence, phone records, claims data and analysis, and Medicare records. On Friday, July 18, 2025, Ogudo sent the United States a discovery letter requesting dozens of items. The United States responded that the undersigned counsel was traveling and would review the letter more carefully over the course of that week. On Monday, July 21, 2025, Ogudo filed the discovery letter as Notice of Discovery Letter with a proposed order asking the Court to grant or deny 13 detailed discovery requests. There was no meaningful conference between the parties about the lengthy set of discovery requests. On July 23, 2025, counsel for Ogudo retrieved the hard drive containing this discovery production, totaling approximately 259 GB of data.

II.     **Ogudo's Notice of Filing of Discovery Letter (Docket Entry Nos. 43 & 47)**

Although Ogudo's "Notice of Filing of Discovery Letter" contains a proposed order, the document is only styled as a notice and does not state why the Court should rule on the proposed order. As a result, Ogudo's notice should not properly be classified as a motion seeking relief, and the Court need not rule on it. *See* CrLR12.2 ("A pretrial motion shall be in writing and state specifically the basis for the motion. The motion shall be supported by a statement of authority.").

Defendant's request to seek the Court's intervention via a "Notice" also reflects a deviation from common practice, the Southern District Local Rules, and this Court's procedures. For example, although the Criminal Local Rules do not address this issue, the Southern District Civil

Local Rules state unequivocally that discovery requests and responses "shall not be filed with the clerk." LR5.4. Likewise, this Court's procedures highlight that discovery disputes shall only be presented to the Court after the parties meaningfully confer and request a "pre-motion conference." *See* Judge Rosenthal's Court Procedures, #4 ("Any party wishing to raise disputed discovery or other pretrial matters must arrange for a conference with the court before filing any motion, briefs, or accompanying materials.").

Ogudo's discovery letter contains a laundry list of items and steps that she believes the government must take. To be clear, the United States has complied and fully intends to continue to promptly comply with its discovery obligations under Rules 12, 16 and 26.2, and its duty to reveal exculpatory and mitigating evidence under *Brady*, *Giglio*, *Jencks*, the Constitution, and other authorities, and will provide supplemental discovery of any such evidence to Ogudo. This includes any evidence in the United States' possession that would tend to negate Ogudo's guilt, is favorable or material to guilt or innocence or punishment, and that would be admissible and useful to Ogudo in the sense that it is material and exculpatory, and could fairly and properly be used by Defendant on the issue of guilt or punishment. Moreover, the United States will comply with Ogudo's discovery requests insofar as they are consistent with Fed. R. Crim. P. 12 and 16 and not inconsistent with Fed. R. Crim. P. 26.2 and 18 U.S.C. 3500. Additionally, the United States is cognizant of its continuing duty to disclose newly discovered evidence or material previously requested or ordered and will promptly comply as required by Fed. R. Crim. P. 16(c), which includes supplementing, if necessary, the materials previously disclosed.

However, some of the requests in Defendant Ogudo's letter seek to impose obligations that are inconsistent with the government's legal obligations. And, even though the government will try to accommodate as many of these requests as possible out of an abundance of transparency and

as a courtesy to defense counsel, it is wholly improper to seek an order from the court demanding that the government do so or be sanctioned. That is particularly true where the parties have not had a chance to meaningfully confer (Ogudo's "Notice" was filed one business day after defense counsel sent the discovery letter) and defense counsel has not yet reviewed the entirety of the discovery productions to identify what might be needed.

The government is responding today to the discovery letter sent by Ogudo. The parties' continued dialogue may ultimately address all of Ogudo's concerns. If not, Ogudo is free to return to court in a procedurally-proper manner. Out of an abundance of caution, and in the event that defense counsel continues to seek the Court's line-by-line intervention on the various discovery requests, the government is attaching its responsive letter as Exhibit 1 to this Response. However, the government's position remains the same: the Court need not get involved in this matter unless and until there are any actual disputes between the parties and Ogudo has reviewed the discovery productions to confirm that she does not already have what she needs.

### III. Ogudo's Motion for Production of Information Favorable to the Accused Pursuant to *Brady v. Maryland* (Docket Entry Nos. 46 & 48)

As discussed above, the United States has complied and fully intends to comply with its obligations for discovery under Rule 16 and its duty to reveal exculpatory and mitigating evidence under *Brady*, *Giglio,* Jencks, the Constitution, and other authorities, and will provide supplemental discovery of any such evidence to the Defendant. As explained in *United States v. Chand*, No. 98-cr-1129, 1998 WL 915909, at *1 (S.D. N.Y. Dec. 30, 1998), "the Government informed defendant that it had been complying, and intended to continue to comply, with its *Brady* obligations. Absent a particularized showing by a defendant that materials exist which require pretrial disclosure, the Government need do no more than acknowledge and abide by its obligations. . . . Defendant's motion for production of *Brady* material is therefore denied" (internal citations omitted).

5

Moreover, there is already a *Brady* order on the docket. (Docket Entry No. 13). Consequently, Ogudo's motion asking for *Brady* materials should be denied as moot.

However, it is worth mentioning various instances in which Ogudo mischaracterizes the government's discovery obligations and seeks a court order requiring discovery beyond that which is required by caselaw, the constitution, statutes, and the Federal and Local Rules of Criminal Procedure. These meritless requests—which are in effect an attempt to obtain an advisory opinion expanding the scope of the government's *Brady* obligations—should be denied because they are vague, overbroad, or without legal support. That is true even where the government habitually produces much of the information requested anyway as a courtesy to defense counsel and a commitment to transparency.

> Below are examples of some of the items in Ogudo's motion that reflect these problems:
>
> (I)(A)(1): *names and addresses* of individuals with favorable information to the Defendant or which is *inconsistent, in any material way*, with the government's theory of the case";
>
> (I)(A)(3): *portions* of any reports…which is favorable to the Defendant or is inconsistent with the government's theory of the case";
>
> (I)(B)(1): *names and addresses* of all persons interviewed *who will not be called as witnesses*;
>
> (I)(B)(2): any written or recorded statements of any person interviewed that the *government does not intend to call*;
>
> (I)(B)(3): those *portions of any reports*…which is favorable to the Defendant or is inconsistent with the government's theory of the case;
>
> (II)(1): all statements made by any persons other than that witness that contradict the witness's testimony in any way;
>
> (II)(2): All *prior arrests* and convictions for witnesses;
>
> (III)(A)(2): grand jury transcripts of witnesses *who did not testify at trial*;
>
> (III)(A)(4): all statements by persons who were not called to testify;

> (III)(A)(5): all reports, memoranda, notes, writings….in connection with the investigation of this case for agents that did not testify; and
>
> (III)(B)(1)-(2): *in camera* review of *any* of the voluminous records that the government deems not discoverable.

Docket Entry No. 46.

Many of these requests go far beyond the government's obligations or violate other court rules. For example, there are various sections of Ogudo's motion pertaining to individuals who will not be called as witnesses. Although the government has an obligation to review all of the interview reports and other materials in its files for *Brady* materials (and regularly produces these reports out of an abundance of transparency anyway, as it has already done here), the Jencks Act only applies to witnesses who testify. *See* 18 U.S.C. § 3500. Likewise, Ogudo seeks grand jury transcripts for non-witnesses. However, regardless of whether any such materials existed in this case, they would be protected by Fed. R. Crim. P. 6(e)'s secrecy provisions and not otherwise subject to disclosure.

Other requests present witness security and other concerns. For example, Ogudo's motion requests the "addresses" of any individuals interviewed by the government, which are sometimes redacted from interview reports to protect those witnesses from threats or intimidation. Even one of the cases she cites (in support of her Motion for a Bill of Particulars, *see* Docket Entry No. 45, at 7) reflects that this is not regularly required. *See United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y. 1989) ("The government need not disclose the addresses of co-conspirators"). This request is particularly problematic given that the government has already uncovered evidence of potential witness tampering during the course of the investigation. Among other things, witnesses have reported repeated concerning contacts by Ogudo or others associated with her to the undersigned counsel and law enforcement. Of course, if Ogudo has a request for a specific address

or contact information, she can raise that with the government's counsel and each request can be evaluated on a case-by-case basis.

Finally, Ogudo repeatedly requests "portions" of any reports that contain information. The United States does not have a legal obligation to direct Ogudo to exactly where any Brady material is located within discovery materials. *See United States v. Jordan*, 316 F.3d 1215, 1253–54 (11th Cir. 2003) ("The defendants also contend that the Government attempted to avoid its *Brady* obligation by requiring them to search the discovered materials for exculpatory material. Their request for *Brady* material was nothing more than a general request for favorable information….They were obviously searching for anything that might persuade a jury to acquit. In sum, the defendants' discovery requests went far beyond what the law, as we have expounded it, requires.").

Again, the government aims to go far beyond its constitutional and statutory discovery obligations out of a commitment to transparency and in order to ensure that defense counsel will have as much information as possible to prepare for trial.  Nevertheless, the Court should not accept Ogudo's assertions about what *Brady* does or does not entail, and Ogudo's request for an advisory opinion on these issues is not a proper use of the Court's limited time and resources.  That is particularly true where the parties have not had the opportunity to meaningfully confer about these issues or asked for the government's assistance in locating certain documents.

## IV. Conclusion

For the foregoing reasons, the United States respectfully requests that this Court deny Ogudo's discovery motions (Docket Entry Nos. 43, 47, 46, & 48).

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

By: */s/ Kathryn Olson*
Kathryn Olson
Brad Gray
Assistant United States Attorneys
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Phone: (713) 567-9146
E-mail: Kathryn.Olson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed on August 20, 2025 and a copy served electronically by the Court's CM/ECF System on all counsel of record.

*/s/ Kathryn Olson*
Assistant United States Attorney